ALLEN B. WILSON *v.* STATE OF MARYLAND

[No. 27, April Term, 1942.]

*Decided June 17, 1942.*

The cause was argued before SLOAN, DELAPLAINE, COLLINS, FORSYTHE, and MARBURY, JJ.

*Calvert K. Hartle* for the appellant.

*Robert E. Clapp, Jr., Assistant Attorney General,* with whom were *William C. Walsh, Attorney General,* and *Charles F. Wagaman, State's Attorney for Hagerstown,* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Dr. Allen B. Wilson, a physician of Hagerstown, was found guilty by a jury in the Circuit Court for Washington County on the charge of unlawfully causing a certain drug to be used by Frances Jane Stanley on August 9, 1941, for the purpose of causing abortion. Code, 1939, Art. 27, Sec. 3.

Mrs. Stanley, a resident of Pennsylvania, twenty-one years old, testified that she was married in June, 1941, and that she called at Dr. Wilson's office on July 31, when he administered a salve which he claimed would produce a miscarriage within twenty-four hours. As the miscarriage did not occur, she returned to his office on August 5, when he gave her another treatment. Suffering severe pains on August 8, she went to Hagerstown

again, arriving there about three o'clock on the morning of August 9. Dr. Wilson gave her pills to alleviate her pain, and shortly afterwards a miscarriage occurred. She swore that she paid him $110 for his services.

Dr. Wilson complains because Mrs. Stanley testified that she saw him in November, 1940, and when she saw him again on July 31, 1941, she said to him: "I guess you know what I am here for." He contends that this testimony prejudiced the jury against him, because they could infer from it that he caused an abortion in November, 1940. It is a general rule that when a person is placed on trial for an offense, he should not be prejudiced by the introduction of evidence of other independent acts of wrongdoing. But while guilt cannot generally be established by proving that the defendant has committed other crimes, nevertheless it is firmly established that evidence of declarations and acts may be admitted to show intent, or a common scheme embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other. *Young v. State,* 152 Md. 89, 136 A. 46; *Meno v. State,* 117 Md. 435, 440, 83 A. 759. The abortion statute in Maryland does not apply where a physician superintends a case of abortion occurring spontaneously as the result of an accident, constitutional debility, or any other natural cause. So, in an abortion case, where guilty intent is an essential element of the crime charged, the State can prove a relevant fact which tends to show the defendant guilty of the crime charged, notwithstanding that it may also show him guilty of a similar distinct offense. *People v. Popescue,* 345 Ill. 142, 177 N. E. 739, 77 *A. L. R.* 1199, 1209. Such evidence is admitted not because it is proof of another crime, but because of its relevancy to the charge in issue. For a person cannot, by multiplying his crimes, diminish the volume of competent testimony against him. *State v. Adams,* 20 Kan. 311, 319; *State v. Sullivan,* 139 Ore. 640, 652, 11 P. 2d 1054, 1058.

Evidence of declarations and acts, which are an immediate accompaniment of the act charged and so closely

4

connected with the main fact as to constitute a part of it, and without which the main fact might not be properly understood, are admissible as a part of the *res gestae*. The test as to whether a declaration or act offered in evidence is part of the *res gestae* is whether it was contemporaneous with the commission of the crime and so connected with it as to illustrate its character. Whether such a declaration or act is an immediate accompaniment is tested, not by the closeness of time, but by casual connection. A definite limit of time cannot be arbitrarily fixed for the reason that so long as the main transaction continues, declarations and acts emanating from it become a part of it. *People v. Jarvis*, 306 Ill. 611, 138 N. E. 102. For instance, in a case in Kentucky, where a physician was indicted after a woman died in his office as a result of an attempt to commit an abortion, it was held that the declarations of the physician tending to show that he had held himself out as an abortionist would be inadmissible to show that he had committed the act in question; but if he attempted to justify his act upon the ground of necessity, then the testimony was admissible to show his motive or intent and to negative the idea that he was acting upon his professional judgment and under a necessity of saving the life of the mother. *Clark v. Commonwealth*, 111 Ky. 443, 63 S. W. 740; 1 *Wharton's Criminal Evidence*, Sec. 252.

The appellant also complains because the trial court admitted in evidence a small box and tube, which were marked "Luenbach's Paste," found in his office on the morning of his arrest. It is well settled that a drug alleged to have been used for the purpose of abortion is admissible in evidence, if it was provided and used under the directions of the defendant. *State v. Sharpe*, 138 S. C. 58, 135 S. E. 635. It is likewise permissible to introduce in evidence any bottle or box alleged to have contained a noxious drug and to have been administered by the accused in violation of the law. *Cook v. State*, 90 Tex. Cr. R. 424, 235, S. W. 875; *Baker v. State*, 112 Tex. Cr. R. 254, 16 S. W. 2d 248. Thus, in a Georgia

case, where the defendant, charged with committing an abortion by means of instruments, complained because the State had shown that he had previously attempted to produce an abortion by means of drugs, Justice Lamar declared: "It was, therefore, competent to offer the bottle, with the number and contents of the prescription, and to establish from the physicians what the effect of this medicine in such doses would have been. There was a logical connection between the two attempts to procure an abortion on the same female. Prior unsuccessful attempts to bring about the abortion may be shown." *Sullivan v. State,* 121 Ga. 183, 48 S. E. 949, 950.

It is improper, of course, to admit a drug in evidence merely on the testimony of an expert that it is possible to use the drug for the purpose of performing an abortion, without any showing of some connection of the drug with the perpetrator or the victim of the crime. *Riley v. State,* 179 Md. 304, 18 A. 2d 583. In the case at bar, however, the box and tube were found by the county investigator in a waste basket in the doctor's office a few hours after the miscarriage. The law of evidence does not require that an instrument, found at or near the place of an arrest, must be positively identified as the instrument used in the commission of the crime, before it may be used in evidence. A lack of positive identificaton of an instrument of crime affects the weight of the evidence rather than its admissibility. If a question is raised as to the connection of certain articles with the crime, the evidence should be submitted for the determination of the jury. *People v. Davis,* 106 Cal. App. 179, 289 P. 194; *People v. Radovich,* 122 Cal. App. 176, 9 P. 2d 542; *State v. Costin,* 46 Wyo. 463, 28 P. 2d 782; 2 *Wharton's Criminal Evidence,* 11th Ed., Sec. 762. We find no error in the admission of the box and tube in evidence.

Dr. S. R. Wells, of Hagerstown, testified that Luenbach's Paste has the effect of irritating the uterus and causing it to contract, thus tending to produce a miscarriage. The appellant objects to this testimony be-

cause Dr. Wells has not used Luenbach's Paste and was unable to say what effect it would produce from his personal experience. It is a fundamental principle that, since physicians are experts in medicine, their opinions are admissible in evidence upon questions that are legitimately within their profession and practice. The function of an expert witness is to instruct the jury in matters so removed from the ordinary pursuits of life that accurate knowledge of them can be acquired only by continued study and experience, the object being to enable the jury to judge intelligently of the force and application of the facts introduced in evidence. *Coyle v. Commonwealth,* 104 Pa. 117, 131. To qualify as an expert, a witness should have such special knowledge of the subject about which he is to testify that he can give the jury assistance and guidance in solving a problem for which their equipment of average knowledge is inadequate. It is sufficient if the court is satisfied that the expert has in some way or other gained such experience in the matter as to entitle his evidence to credit. To be competent to give an expert opinion on medical questions, a witness may be qualified by study without practice, or by practice without study. *Copeland v. State,* 58 Fla. 26, 50 So. 621, 624. For example, a practicing physician, who is a graduate of a recognized medical school, and who has sufficiently qualified himself to have a definite opinion of his own, may testify as an expert on the subject of poisoning, even though it has not been shown that he has had any experience in poisoning cases. *People v. Thacker,* 108 Mich. 652, 66 N. W. 562, 565; 2 *Jones on Evidence in Civil Cases,* 4th Ed., Sec. 379. Likewise, a pharmacist is qualified to explain whether the action of opiates on the human body depends to some extent upon the age and sex of the patient, and also what in his opinion would be a dangerous dose of morphine acetate for a child of a certain age. *Watkins v. Potts,* 219 Ala. 427, 122 So. 416, 65 *A. L. R.* 1097. It has been held by this court that the opinions of medical experts are admissible as

to the cause which produced, or probably produced, or might have produced, a certain physical condition. The opinion of an expert as to the probability, or even the possibility, of the cause of a certain condition may frequently be of aid to the jury. *Langenfelder v. Thompson,* 179 Md. 502, 507, 20 A. 2d 491, 493, 136 A. L. R. 960, 963.

According to the formula printed on the box admitted at the trial below, Luenbach's Paste contains certain percentages of iodine, thymol, tincture of myrrh and tincture of benzoin. Dr. Wells, a graduate of the Medical School of the University of Maryland, was qualified to express his opinion regarding the effect of the drug after he knew its contents, even though he may never have prescribed the drug himself. How much knowledge a witness must possess before he is entitled to express an opinion as an expert is a preliminary question which is left largely to the discretion of the trial court, and its ruling thereon will not be disturbed unless clearly erroneous as an abuse of discretion. *Baltimore, Chesapeake & Atlantic Ry. Co. v. Moon,* 118 Md. 380, 392, 84 A. 536; *Ottenberg v. Ryan & Riley Co.,* 130 Md. 38, 45, 99 A. 984; *Chateaugay Ore & Iron Co. v. Blake,* 144 U. S. 476, 484, 12 S. Ct. 731, 732, 36 L. Ed. 510, 512.

The jury found Dr. Wilson not guilty of administering the alleged drug, but guilty of causing the drug to be used by Mrs. Stanley. The court overruled Dr. Wilson's motion for a new trial, and sentenced him to imprisonment in the Maryland Penitentiary for a term of three years. In the trial of every criminal case in this State, the jury are the judges of both the law and the facts. Maryland Constitution, Art. 15, Sec. 5. Accordingly, the question of legal sufficiency of evidence in a criminal case to sustain a conviction is exclusively for the jury to determine. The Court of Appeals has invariably refused to pass upon the question of sufficiency of evidence to establish the commission of a crime with which a defendant has been charged, for otherwise the constitutional function of the jury would be usurped. Where

8

there is no reversible error in the rulings of the trial court, the verdict and judgment must stand. It is well settled that the grant or refusal of a motion for a new trial is discretionary with the trial court in criminal as well as civil cases, and from an order overruling such a motion no appeal will lie. *Archer v. State,* 45 Md. 457; *Myers v. State,* 137 Md. 482, 113 A. 87; *Boscoe v. State,* 157 Md. 407, 146 A. 238.

Likewise, the legal sufficiency of evidence upon which to base a conviction cannot be tested on a motion in arrest of judgment, for such motion must be determined solely from the record, and not from the evidence admitted at the trial. *Coblentz v. State,* 164 Md. 558, 166 A. 45, 88 *A. L. R.* 886; *Berger v. State,* 179 Md. 410, 20 A. 2d 146. It is provided by statute in this State that no judgment upon any indictment shall be stayed for any matter or cause which might have been a subject of demurrer to the indictment. Code, 1939, Art. 27, Sec. 649; *McCurdy v. State,* 151 Md. 438, 135 A. 161.

*Judgment affirmed, with costs.*