HOWARD A. TURNER *v.* STATE OF MARYLAND

[No. 156, September Term, 1981.]

*Decided November 22, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Martha Weisheit, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Alexander L. Cummings, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

COLE, J., delivered the opinion of the Court. MURPHY, C. J., and SMITH, J., dissent. SMITH, J., filed a dissenting opinion at page 647 *infra,* in which MURPHY, C. J., concurs.

We shall decide in this case whether the testimony of a third party relating an excited utterance made by an accomplice to the third party provides the necessary corroboration of the accomplice's testimony. We distill the facts giving rise to this issue as follows.

At the murder trial of Howard Turner, in the Criminal Court of Baltimore, John Morris, an admitted accomplice, testified that while he, Turner, and Mark Willis were committing a robbery, Turner shot Morris in the shoulder and, immediately thereafter, fatally wounded the robbery victim. Morris testified that after being shot he went to the nearby apartment of Thelma Williams and Dennis Atkinson and told them that "Howard" had shot him during a robbery. In corroboration of Morris' in-court testimony and over objection of defense counsel, Williams and Atkinson testified that when they asked Morris whether he had been shot, Morris replied that "if m_____ f_____g Howard had shot right he wouldn't have shot me." The testimony of Morris and the hearsay testimony of Atkinson and Williams was the only evidence linking Turner to the offenses charged.

Turner was convicted of, *inter alia,* first degree murder. On appeal, the Court of Special Appeals affirmed, *Turner v. State,* 48 Md. App. 370, A.2d 88 (1981), holding that Morris' excited utterance was sufficient corroboration of Morris' in-court testimony. We granted certiorari to consider the important evidentiary question presented.

It is firmly established in this State that a person accused

of a crime may not be convicted on the uncorroborated testimony of an accomplice. The rule was first enunciated in *Luery v. State,* 116 Md. 284, 81 A. 681 (1911) and has been steadfastly adhered to since. *See, e.g., Brown v. State,* 281 Md. 241, 378 A.2d 1104 (1977); *State v. Foster,* 263 Md. 388, 283 A.2d 411 (1971); *Strong v. State,* 261 Md. 371, 275 A.2d 491 (1971); *Veney v. State,* 251 Md. 159, 246 A.2d 608 (1968); *McDowell v. State,* 231 Md. 205, 189 A.2d 611 (1963); *Boggs v. State,* 228 Md. 168, 179 A.2d 338 (1962); *Mulcahy v. State,* 221 Md. 413, 158 A.2d 80 (1960); *Wright v. State,* 219 Md. 643, 150 A.2d 733 (1959), *cert. denied,* 361 U.S. 851 (1959); *Nolan v. State,* 213 Md. 298, 131 A.2d 851 (1957); *Watson v. State,* 208 Md. 210, 117 A.2d 549 (1955). Indeed, in *Brown v. State, supra,* we specifically addressed the question whether the rule should be abandoned and concluded that there was "as much need today, perhaps more so in view of the escalating prosecutorial trend freely to utilize accomplices as State witnesses, to retain the requirement that a person accused of a crime not be convicted on the uncorroborated testimony of an accomplice." *Id.* at 246.

Our cases have expressed two reasons for the necessity of this rule: (1) the witness offering the testimony is admittedly contaminated with guilt, *see, Watson v. State, supra,* 208 Md. at 217, and (2) the possibility of an ulterior motive on the part of the accomplice who seeks to curry favor with both the prosecutor and the police in the hope of obtaining a lesser sentence or a reduced charge. *See, Luery v. State, supra,* 116 Md. at 293. Absent such a rule, an accomplice "is free to designedly point the finger of guilt at one, who, for the lack of an alibi or witness, may find himself unlawfully incarcerated. Such would offend our whole system of justice." *State v. Foust,* 588 P.2d 170, 173 (Utah 1978).

Thus, the rule requiring corroboration presumes that the accomplice's testimony, by itself, is untrustworthy. However, as a safeguard against depriving the factfinder of evidence from a source intimately connected with the crime, we have said that only slight corroboration is required. Chief Judge Murphy said for the Court in *Brown* that

Not much in the way of evidence corroborative of the accomplice's testimony has been required by our cases. We have, however, consistently held the view that while the corroborative evidence need not be sufficient in itself to convict, it must relate to material facts tending either (1) to identify the accused with the perpetrators of the crime or (2) to show the participation of the accused in the crime itself. *See Wright v. State,* 219 Md. 643, 150 A.2d 733 (1959). If with some degree of cogency the corroborative evidence tends to establish either of these matters, the trier of fact may credit the accomplice's testimony even with respect to matters as to which no corroboration was adduced. *McDowell v. State,* 231 Md. 205, 189 A.2d 611 (1963). That corroboration need not extend to every detail and indeed may even be circumstantial is also settled by our cases. [*Id.* at 244.]

The State argues that an excited utterance, even coming from the accomplice, has all the necessary qualitative indicia of trustworthiness to be corroborative of the accomplice's testimony. It cites us to *Wilson v. State,* 181 Md. 1, 26 A.2d 770 (1942) where we said

Evidence of declarations and acts, which are an immediate accompaniment of the act charged and so closely connected with the main fact as to constitute a part of it, and without which the main fact might not be properly understood, are admissible as a part of the *res gestae.* The test as to whether a declaration or act offered in evidence is part of the *res gestae* is whether it was contemporaneous with the commission of the crime and so connected with it as to illustrate its character. Whether such a declaration or act is an immediate accompaniment is tested, not by the closeness in time, but by [causal] connection. A definite limit of time cannot be arbitrarily fixed for the reason that so long as the

main transaction continues, declarations and acts emanating from it become a part of it. [*Id.* at 3-4.]

We agree with the State that when the utterance is closely connected in time and causally connected with the event itself that the likelihood for reflection and fabrication by the utterer is most unlikely if not improbable. However, despite the usual credibility given to an excited utterance and despite the minimal evidence required to be corroborative, we think it, at least, implicit in the requirement that an accomplice's testimony be corroborated that such corroboration come from some source other than the accomplice himself.

While we have not addressed the precise issue before, it has arisen and been resolved in other jurisdictions. There are eighteen states which have a rule of corroboration similar to Maryland's; [1] however, we have uncovered no court of last resort which would allow an accomplice's testimony to be corroborated by his own extrajudicial statements and only two lower appellate court cases, neither of which contains an analysis of the issue, which would allow such testimony. *See People v. Warner,* 76 Cal. Rptr. 160, 270 Cal. App. 2d 900 (1969); *People v. Doyle,* 107 Misc. 268, 177 N.Y.S. 641 (1919).

In *State v. Mitchell,* 625 P.2d 1155 (Mont. 1981), the prosecution introduced testimony from an accomplice to the effect that the defendant had paid the accomplice to burn down the defendant's house trailer. The prosecutor also introduced testimony from two individuals that they had heard the accomplice say, before the commission of the offense, that the defendant had offered the accomplice cash

---

1. In Brown v. State, 281 Md. 241, 378 A.2d 1104 (1977), we noted then that seventeen states had statutes barring conviction of an accused solely on uncorroborated accomplice testimony. *Id.* at 245, n.3. One state, Tennessee, adopted this rule by case law. *See, State v. Fowler,* 213 Tenn. 239, 245-46, 373 S.W.2d 460 (1963). The courts and thirty states adhere to the common law rule allowing the testimony to be sufficient. *See* Brown v. State, *supra,* 281 Md. at 242-43, n.1 (contains a list of the states). Of course, only those jurisdictions which, like Maryland, bar a conviction absent some corroboration would have any need to address this issue.

and a car to set the fire. The Montana Supreme Court held that, even though the testimony of the two rebuttal witnesses was not hearsay and admissible substantially under Montana law, it was not sufficient to constitute corroboration as

> the State [was] attempting to use, not a previous statement by the defendant to corroborate an accomplice, but a previous statement of the accomplice. Consequently, if we were to allow the testimony to be used as corroboration evidence, we would in effect be allowing a prior statement made by an accomplice to corroborate his own testimony. Such a result would frustrate the purpose of the statute and will not be permitted. [*Id.* at 1158.]

In *State v. Diehl,* 64 Ohio St. 2d 179, 414 N.E.2d 410 (1980), two men armed with a gun and wearing masks broke into a woman's home and robbed her of $800 and a coin collection. About a year later one of the men, the woman's son, confessed to her that he and another man, Diehl, had committed the offense and subsequently repeated his confession before a grand jury. At Diehl's trial, however, the son refused to testify so the State introduced a transcript of the grand jury proceedings and put the victim on to testify as to what her son had told her. Without deciding whether the transcript and victim's testimony were admissible, the Ohio Supreme Court reversed Diehl's conviction because there was no evidence in the record which corroborated the victim's son's testimony holding that the victim's testimony was not independent corroboration but, "[r]ather, it was merely a restatement of what McGhee [her son] told the grand jury. To say such testimony is corroborative would allow an accomplice to corroborate his own testimony." *Id.* at 411. *See also, McCoy v. State,* 397 So.2d 577, 585 (Ala. Crim. App. 1981) ("accomplice's out-of-court statements cannot be used to corroborate his own testimony"); *People v. Valardi,* 49 Cal. Rptr. 339, 240 Cal. App. 2d 98 (1966) ("An accomplice's testimony is no better coming from another's mouth than coming from his own. If it were, the accomplice could broad-

cast his testimony to the world before trial and then call anyone who heard it to corroborate it in court."); *Pritchard v. State,* 224 Ga. 776, 164 S.E.2d 808 (1968) (corroboration must be independent of the testimony of the accomplice, thus, physical evidence that corroborated testimony of the accomplice without connecting the accused to the offense was insufficient to sustain a conviction).

Despite these out-of-state decisions, the State urges us to hold that in Maryland the attendant indicia of trustworthiness, as well as the very nature, of the excited utterance exception to the hearsay rule overcome the concerns that form the rationale for the accomplice corroboration rule. Specifically, the State argues that because Morris' statement was made in the heat of excitement before he had had a chance to reflect or fabricate, the protections afforded by the corroboration rule were not violated.

The problem with the State's analysis is that it confuses the admissibility of evidence with its sufficiency to serve as corroboration. Irrespective of whether Morris' statement meets all the criteria of the excited utterance exception and is therefore admissible substantively, it has been the considered judgment of this Court since 1911 that there must be corroboration of an accomplice's testimony in order to constitute sufficient evidence to sustain a conviction. The point was well stated by the dissent in the Court of Special Appeals: "The hearsay rule is riddled with exceptions, each and every one of which is based on the presumed reliability of evidence meeting the requirements of the exception." *Turner v. State,* 48 Md. App. 370, 381, 428 A.2d 88 (1981) (Wilner, J., dissenting). The question is not the reliability of the statement but its sufficiency as corroboration and for this reason the State's argument cannot stand.

We believe the conclusion is logical that commensurate with the requirement that an accomplice's testimony must be corroborated is the requirement that the evidence offered as corroboration must be independent of the accomplice's testimony. Clearly, repeating what an accomplice stated out

of court cannot mount this hurdle. As the court in *People v. Valardi, supra,* 49 Cal. Rptr. 339, 340, put it, "An accomplice's testimony is no better coming from another's mouth than coming from his own." We hold, therefore, that in order to satisfy the rule of independent corroboration of accomplice testimony, the proffered evidence must consist of something more substantial than the extrajudicial comments of the accomplice himself.

Applying this holding to the instant case, it becomes apparent that Turner's conviction must be reversed. The only evidence identifying Turner with the perpetrators of this murder and tending to show his participation in the offense was the testimony of Morris supported by that of Williams and Atkinson. However, Williams and Atkinson related no more than what Morris had told them. It would eviscerate the rule to allow an accomplice to corroborate himself. It follows that the conviction must be reversed on the basis that there was insufficient evidence.

> *Judgment of the Court of Special Appeals reversed and case remanded to that Court with instructions to reverse the judgment of the Criminal Court of Baltimore, Mayor and City Council of Baltimore to pay the costs.*

*Smith, J., dissenting:*

I find here sufficient corroboration of the testimony of the accomplice to warrant an affirmance of the conviction.

It should be borne in mind that, as the majority opinion states, the Maryland rule requiring corroboration of the testimony of an accomplice is one created by this Court. Thus, our situation differs from that in every other state with such a rule other than Tennessee since the rule in those other states is one laid down by statute.

Our rule was enunciated in *Luery v. State,* 116 Md. 284,

81 A. 681 (1911). The rationale for the rule was stated by Chief Judge Boyd for the Court:

"But the undoubted fact is that the experience of the Courts, which is certainly much greater than that of juries, is that it is unsafe, at least in the great majority of cases, to rest a conviction upon the uncorroborated evidence of an accomplice. Any one who has had experience at *nisi prius* trials knows how captivating is the story of one relating the circumstances connected with some mysterious crime. When such an one has as a motive the prospect of freedom, a milder sentence or the favor of the officers who have him in charge, an innocent one may undoubtedly be made to suffer, if great caution is not used. Hence it would seem to be safer to require some corroboration . . . ." 116 Md. at 293.[1]

The reason for the rule was reiterated by Chief Judge Murphy for the Court in *Brown v. State,* 281 Md. 241, 243-44, 378 A.2d 1104 (1977). In that case we rejected a request that we eliminate the requirement for corroboration, concluding that it was safer to require some corroboration of accomplice testimony. The same general idea as to the reason for the rule was expressed in somewhat different language by Judge Delaplaine for the Court in *Watson v. State,* 208 Md. 210, 117 A.2d 549 (1955):

"The reason for the rule requiring the testimony of an accomplice to be corroborated is that it is the testimony of a person admittedly contaminated with guilt, who admits his participation in the crime for which he particularly blames the defendant, and it should be regarded with great suspicion

---

[1]. In *Wright v. State,* 219 Md. 643, 647, 150 A.2d 733 (1959), Judge Horney pointed out for the Court that the rule as "applied today is substantially the same as when it was formulated by the decision in . . . *Luery,*" although "when that case was decided, this Court had neither a duty nor a right to review the legal sufficiency of the evidence in criminal cases, and a trial court could not take a criminal case away from the jury because of insufficient corroboration."

and caution, because otherwise the life or liberty of an innocent person might be taken away by a witness who makes the accusation either to gratify his malice or to shield himself from punishment, or in the hope of receiving clemency by turning State's evidence. *People v. Sapp,* 282 Ill. 51, 118 N.E. 416, 422; *United States v. Van Leuven,* 65 F. 78, 82." 208 Md. at 217.

To similar effect see 7 J. Wigmore, *Evidence* § 2057 at 417 (Chadwick rev. 1978).

The statement of the accomplice to the effect that Turner had shot him in the course of a robbery was admitted as an excited utterance. Two persons said he made that statement. We know that this statement was made but a few short minutes after the commission of the crime. This is gleaned from the testimony of the police officer who saw the accomplice running from the crime scene. Almost immediately he encountered that accomplice at the house where the two people were located who testified as to what was said to them by the accomplice at that place.

It is important to bear in mind that the requirements for admission of a spontaneous or excited utterance as stated by Dean Wigmore include that "[t]here must be some *occurrence, startling enough* to produce this nervous excitement and render the utterance spontaneous and unreflecting" and that "[t]he utterance must have been *before there has been time to contrive and misrepresent,* i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance." 6 Wigmore, op. cit., § 1750 at 202-03. (Emphasis in original.) This statement fits within Dean Wigmore's specifications.

We have said many times that our cases do not require much in the way of evidence corroborative of the testimony of an accomplice and that while the corroborative evidence need not be sufficient in itself to convict, it must relate to material facts tending either to identify the accused with the perpetrators of the crime or to show the participation of the

accused in the crime itself. *See, e.g., Brown,* 281 Md. at 244, and *Wright v. State,* 219 Md. 643, 650, 150 A.2d 733 (1959).

Applying the New York statutory requirement that corroborative evidence must tend to connect the defendant with the commission of the offense, the New York Court of Appeals in *People v. Daniels,* 37 N.Y.2d 624, 630, 339 N.E.2d 139 (1975), said, "All that is necessary is to connect the defendant with the crime in such a way that the jury may be reasonably satisfied that the accomplice is telling the truth." To like effect see *People v. Cunningham,* 48 N.Y.2d 938, 940, 401 N.E.2d 182 (1979), and *People v. Arce,* 42 N.Y.2d 179, 186, 366 N.E.2d 279 (1977). I suggest that the statement here accomplishes that purpose.

Since the rule here is of our making, we are at liberty to construe it in the manner which we believe will best serve the ends of justice. It is the *testimony* of the accomplice which must be corroborated. I think that *testimony* was corroborated here by what he said to others almost at the scene of the crime. We have here no "captivating . . . story" related to the jury by the accomplice. When the accomplice here almost immediately after being shot made the statement attributed to him he had none of the motives usually given as reasons for the rule. In other words, at that point he was not seeking a milder sentence or the favor of officers who had him in charge, nor is it likely in the few minutes which had elapsed since commission of the crime that he had had sufficient time to reflect relative to his own freedom, the prospect of receiving clemency by turning State's evidence, or that it provided him an opportunity to gratify any malice he might have had against Turner. In the words of Wigmore, the statement was made before there was "time to contrive and misrepresent." In other words, in this case the purpose of the rule is not served by a holding that the testimony of two witnesses as to the spontaneous statement of the accomplice made within minutes of the crime does not provide sufficient corroboration of his testimony generally. The holding of the majority here simply adds fuel to the public's belief that courts go out of their way to protect those who are accused of crime when such action

is not necessary. It serves no useful purpose other than to let a guilty man go free. It fails to protect the rights of the public generally and, more particularly, the rights of victims of crime.[2] Hence, I would affirm.

Chief Judge Murphy authorizes me to state that he joins in the views here expressed.

---

2. It is ironical that the accomplice and the third member of the trio involved in this incident (convicted of second degree murder) will serve prison terms but the one convicted of first degree murder will be a free man. There was not even a petition for certiorari in the third person's case. The Court of Special Appeals disposed of his contentions in less than one page of opinion. See *Turner v. State,* 48 Md. App. 370, 377-78, 428 A.2d 88 (1981). On the issue of corroboration of the testimony of the accomplice, Judge Weant observed for that court that the corroboration by the two persons "went beyond the mere repetition of the excited utterance or admission against interest discussed in section I of appellant Turner's arguments." *Id.* at 380.